# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **MONA OWENS, as** | ) | |
| **Administratrix of the Estate of** | ) | |
| **John Michael Owens, Deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-10-S-578-NE** |
| | ) | |
| **SUNBRIDGE HEALTHCARE,** | ) | |
| **CORPORATION d/b/a** | ) | |
| **SUNBRIDGE CARE AND** | ) | |
| **REHABILITATION OF** | ) | |
| **DECATUR,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the court on defendant's motion to dismiss portions of plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and motion for a more definite statement of plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(e).[1]  Upon consideration of the motion, plaintiff's response,[2] and plaintiff's amended complaint, the court concludes the motion is due to be denied.

## I. STANDARDS OF REVIEW

---

[1]Doc. no. 16.

[2]Doc. no. 17.

## A.     Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).[3]  This rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp.*

---

[3] In full text, Rule 12(b) provides that:

Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

> (1) lack of subject-matter jurisdiction;
>
> (2) lack of personal jurisdiction;
>
> (3) improper venue;
>
> (4) insufficient process;
>
> (5) insufficient service of process;
>
> (6) failure to state a claim upon which relief can be granted; and
>
> (7) failure to join a party under Rule 19.

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

Fed. R. Civ. P. 12(b).

*v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. —, 129

S. Ct. 1937, 1949 (2009) (citations omitted).

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S., at 555]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*., at 557.

> To survive a motion to dismiss founded upon Federal Rule of Civil Procedure 12(b)(6), [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id*., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*., at 557 (brackets omitted).

> Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*., at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives

a motion to dismiss.  *Id.*, at 556.  Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  490 F.3d, at 157-158.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations.  *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.*

*Ashcroft*, 556 U.S. at —, 129 S. Ct. at 1949-50 (emphasis added).

## B.    Rule 12(e) Motion for a More Definite Statement

Rule 12(e) provides that

[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.  The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.  If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

Fed. R. Civ. P. 12(e).

## II.  ALLEGATIONS OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, Mona Owens, is the Administratrix of the Estate of John Michael

4

Owens, who is deceased.  John Owens was a resident of defendant's "Sunbridge Care

and Rehabilitation for Decatur" facility at the time of his death.[4]  As the arguments

raised by defendant in support of its motion to dismiss relate primarily to the

sufficiency of plaintiff's pleading, it will be helpful to set out plaintiff's allegations

in their entirety.  Plaintiff alleges:

> 7.    [John] Owens, who before the amputation of his left leg was
> self sufficient, living at home and able to care for himself.  He was
> admitted to Sunbridge on or about the 20th day of January, 2008, for
> physical and prosthetic therapy, with the following diagnosis:
>> a.    post-amputation left leg;
>> b.    diabetes;
>> c.    amputation of right great toe approximately eighteen
>> months prior.
>
> 8.    Upon admission to Sunbridge as of January 20th, 2008,
> Owens was a known risk for infection and required diligent observation,
> maintenance, monitoring and preventive measures to avoid said
> infections.
>
> 9.    Defendant, Sunbridge Healthcare Corporation, is a New
> Mexico corporation doing business in Alabama, doing business as
> SunBridge Care and Rehabilitation for Decatur, holding itself out as a
> skilled nursing facility and/or nursing home at 4th Avenue SE, Decatur,
> Alabama.
>
> 10.    Defendant Sunbridge holds itself out to the public and
> federal and state agencies as a skilled nursing facility, and as an
> institution skilled to provide competent and time rehabilitation services,
> medical, dental and health care treatment, supervision, facilities and
> equipment to patients and residents admitted thereto.  As a skilled
> nursing facility and/or nursing home, Sunbridge is licensed by the

---

[4]Doc. no. 15 (Amended Complaint), at ¶¶ 1-2.

Licensure and Certification Division of the State of Alabama Department of Public Health ("DLC"), now known as Division of Health Care Facilities, and is subject to regulations promulgated by the United States Government and by the rules of the DLC for the operation of skilled nursing facilities and nursing homes in Alabama.  Pursuant to the rules of DLC for operation of nursing home facilities in Alabama as mandated in Alabama Administrative Code 420-5-10-.01 through 420-5-10-.18, and rules and regulations promulgated by the United States Government for Medicare and Medicaid providers and recipients as mandated by Code of Federal Regulations 42 C.F.R. § 483.1 through 42 C.F.R. § 483.75, Defendant Sunbridge was to be operated and managed in accordance with all federal, state, Medicare or Medicaid standards for comprehensive skilled nursing care.  These include, but are not necessarily limited to, the regulations enacted pursuant to the Omnibus Budget Reconciliation Act (OBRA) by HCFA, and regulations dealing with long term health care facilities and Medicare and Medicaid benefits as found not only at 42 C.F.R. Part 483, but also 42 C.F.R. Part 405, 42 C.F.R. Part 420 and 42 C.F.R. Part 442, as well as the Rules of the Alabama State Board of Health, Division of Licensure and Certification, for Nursing Homes adopted on November 16, 1998.

. . . .

12.    Pursuant to the laws, rules and regulations of the United States and the State of Alabama, the residents of Defendant Sunbridge, to include Owens, were owed a number of duties, which, among others, were to provide each resident and Owens with the highest practicable degree of nursing and medical care, proper nutrition for each resident's particular diagnoses, conditions and history, a safe, sanitary and comfortable environment and to act in a manner so as to not cause harm to the resident. These duties owed to Owens were systematically, deliberately, negligently or wantonly breached by Defendant, their employees, contractors and agents.

13.    The DLC rules, the United States Code of Federal Regulations, and the operations manuals and/or policies and procedures for the Defendant Sunbridge defined the standard of care and treatment

for the residents and patients at the Sunbridge. Defendant, however, repeatedly failed to meet that standard of care, and the duties owed to Owens and the residents of Defendant Sunbridge.

14.   During Owens' residency at Sunbridge, Defendant Sunbridge, through agents and employees, and contrary to their duty and undertaking to furnish Owens with competent and timely medical and health care, diagnoses and treatment, negligently or wantonly failed in their duties and caused Owens to be injured, which proximately resulted in his death in the following ways, among others:

a.   By failing to properly and adequately budget Sunbridge in order to provide the highest practical care and service to Owens. This resulted in insufficient numbers of qualified nursing staff, maintenance staff, and physical therapy/ rehabilitation staff to meet the needs of residents and further failing to ensure adequate amounts of nutrition and hydration, a failure to accurately record, document and reflect the intake/output and weight changes of the deceased;

b.   By failing to provide sufficiently qualified nursing and other staff in sufficient numbers and quantity at Sunbridge in order to provide the highest practical care and service to Owens, and either fraudulently misrepresenting or suppressing this fact from Owens, his family and representatives.

c.   By the fact the Defendant negligently or wantonly recruited, hired, investigated, retained, supervised and/or trained the administrative staff, nursing staff, maintenance staff, physical therapy staff, dietary staff, and other employees at Sunbridge, which caused, contributed to, or proximately resulted in the neglect of Owens, his injuries, infections, mal-nourishment and dehydration.

d.   By failing to observe an adequate infection control program at the facility required by Department of Public Health regulations and OBRA rules and regulations and by failing to

7

prevent the development and transmission of disease and infection in and around the right foot and toe area. By failing to properly handle Owens' dressings, medications, and wound cleansing procedures in order to prevent infections, Sunbridge was negligent and/or wanton. During the course of Owens' residency at Sunbridge, Defendant, their employees and/or agents failed to keep open wounds and ulcers properly cleaned and covered and/or otherwise failed to provide proper treatment.

      e.      By failing to observe proper hygiene care and failing to keep Owens clean including bathing, dressing changes and other routine cleaning and grooming to prevent infection and assist in the healing process as required by the applicable standards of care, policies and procedures of Sunbridge, DLC rules and OBRA regulations.

      f.      By failing to prepare and draft nursing progress notes in regard to Owens which would describe his changing condition(s) with respect to the description of his wounds and infections and other site developments, and further, no proper assessment was done in regard to her wounds or infection sites and/or subjective complaints of pain.  Accurate, timely and appropriate assessments to the right leg and ankle area infection were not provided by Defendant, their employees and/or agents.

      g.      By failing to prepare proper nursing assessments and properly implement nursing care in regard to Owens and by failing to take steps to correct shortcomings in care. Owens suffered from malnutrition and dehydration. Defendant failed to regularly weigh Owens, check his vital signs and/or check his conditions through laboratory or x-ray or other medical testing.

      h.      By failing to adopt and/or prepare and follow a complete, accurate and individualized patient care plan and assessment for Owens and the failure to take adequate steps to correct or address this deficiency. Owens' care plan throughout his residency does not properly reflect his diagnoses, does not

8

properly set forth a hydration program and safeguard the implementation of that program, failed to follow the plan of care with regard to ambulation and failed to modify the care plan in light of significant changes in his medical condition;

i.      By failing to adopt and/or prepare and follow a complete, accurate and individualized patient care plan and assessment for Owens and to take adequate steps to correct or address this deficiency. Owens' care plan throughout his residency does not properly reflect his diagnoses, such as infection, diabetes and further fails to adequately address and monitor his conditions such as drug interaction, infections, nutrition and hydration.

j.      By failing to notify Owens' physician of deterioration of his condition in a timely manner.

k.      By failing to follow operations manuals and/or policies and procedures for Sunbridge, OBRA regulations, DLC rules and regulations and applicable Alabama law.

l.      By failing to document in a timely and proper manner and/or by failing to document at all, Owens' condition, as well as the care and treatment to be rendered to him and by further failing to assess and monitor Owens' dietary status, wound and infections. By violating the Code of Alabama, §38-9-8 (1975, as amended) by failing to report or cause a report to be made of the abuse and/or neglect of Owens.

m.      By failing to inform Owens' family or health care providers of the change of his well-being, conditions or dangerous propensities of his conditions, particularly if such conditions were not diagnosed and treated properly and in a timely manner.

n.      By failing to adhere to dietary assessment requirements concerning daily fluid intake requirements/output.

o.      By failing to adhere to OBRA regulations and DLC

rules and regulations concerning the performance of the admission assessment, MDS assessment and care plan by a registered nurse.

p.      By failing to utilize that degree of medical, nursing and health care skills, knowledge and competence required by law of all skilled nursing facilities.

q.      The above wrongful acts and omissions constitute negligence, wantonness  and/or breach of duty and are systemic and the general practice, course of conduct, habit, custom and/or routine practices of Defendant at the Sunbridge facility. The wrongful acts, omissions, neglect, wantonness and/or abuse by the Defendant, outlined above, proximately caused or resulted in severe permanent injuries that ultimately led to the death of John Michael Owens.

15.      In regard to the above wrongful acts, omissions and acts of negligence and/or wantonness as set forth above, these acts have become the general practice, habit, custom and routine practice of the staff and employees at the Sunbridge facility.

16.      Defendants were on notice of their repeated violations of DLC rules and OBRA regulations, Sunbridge's own policies and procedures and the repeated breaches of duties owed to Owens because of complaints of substandard care, by residents, and residents' sponsors and family members and by deficiency reports prepared by the DLC. Defendant, however, failed to take adequate steps to correct such violations and deficiencies.

17.      The systemic failure of the Defendants outlined above contributed to and/or proximately caused the death of John Michael Owens.

18.      The wrongful acts, omissions, neglect, wantonness, and/or abuse by the Defendants, outlined hereinabove, proximately caused and/or contributed to the death of John Michael Owen.[5]

---

[5]*Id.* at ¶¶ 7-18.

## III.  DISCUSSION

Defendant asks the court to dismiss plaintiff's claims for alleged inadequate budgeting or staffing of the defendant's nursing home, and for an alleged failure to adopt or enforce appropriate policies and procedures, because those theories of corporate liability are not recognized under Alabama law. Defendant also requests the court to require plaintiff to file a Second Amended Complaint that satisfies the heightened pleading requirements of Section 6-5-551 of the Alabama Medical Liability Act.

### A.    Corporate Liability Allegations

Defendant argues that plaintiff's claims based upon the following alleged breaches of the standard of care are not cognizable under Alabama law:  (1) a failure "to properly and adequately budget Sunbridge in order to provide the highest practical care and service to Owens;"[6] (2) a failure "to provide sufficiently qualified nursing and other staff in sufficient numbers and quantity";[7] and (3) a failure "to follow operations manuals and/or policies and procedures for Sunbridge, OBRA regulations, DLC rules and regulations and applicable Alabama law."[8]

The parties agree that plaintiff's claims are governed by the Alabama Medical

---

[6] Amended Complaint, at ¶ 14(a).

[7] *Id.* at ¶ 14(b).

[8] *Id.* at ¶ 14(k).

Liability Act ("AMLA"), Alabama Code § 6-5-480 *et seq.* and Alabama Code § 6-5-540 *et seq.*[9]   The AMLA provides that, "[i]n any action for injury or damages or wrongful death," a plaintiff must prove "that the health care provider failed to comply with the standard of care and that such failure probably caused the injury or death in question."  Ala. Code § 6-5-549 (1975).  The "standard of care" is statutorily defined as "that level of such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in like cases."  Ala. Code § 6-5-542(2) (1975).

> The determinative issue regarding Defendants' liability is whether they exercised such reasonable care, skill and diligence as other nursing homes would ordinarily exercise under similar circumstances and, if not, whether the alleged breach proximately caused the harm and death at issue. *Keebler v. Winfield Carraway Hospital*, 531 So. 2d 841 (Ala.1988). If Defendants provided reasonable care, they have fulfilled any duty owed to Plaintiff, notwithstanding an unfortunate outcome. *McMickens v. Callahan*, 533 So. 2d 579 (Ala.1988). Under the AMLA, for Plaintiff to prevail in an action against a nursing home, Plaintiff must establish by substantial evidence: (1) the appropriate standard of care; (2) a deviation therefrom by Defendants' nursing personnel; and (3) proximate cause between the act or omission constituting the breach and the subsequent death. *Peden v. Ashmore*, 554 So. 2d 1010 (Ala.1989).

*Estate of Bradley ex rel. Bradley v. Mariner Health, Inc.*, 315 F. Supp. 2d 1190, 1194 (S.D. Ala. 2004).

---

[9]*See* doc. no. 17 (defendant's brief), at 2 ("All claims in this case are governed by the Alabama Medical Liability Act. . . ."); doc. no. 18 (plaintiff's brief), at 2 ("Plaintiff acknowledges and stipulates that the Defendant Sunbridge is a healthcare provider qualifying under the terms and definitions of that type entity contained in the AMLA.").

Thus, a nursing home can be held liable under a theory of *respondeat superior* for a breach of the applicable standard of care by any health care provider employed by it.   A nursing home also can be held liable for negligently hiring, training, or supervising its employees, *see* Ala. Code § 6-5-551 (1975), or for negligently appointing or supervising an incompetent health care provider whose negligence injures the plaintiff, *see, e.g., Humana Medical Corporation of Alabama v. Traffanstedt,* 597 So. 2d 667, 669 (Ala. 1992).  The allegations of plaintiff's complaint that are at issue in this motion clearly do not fall under either of the latter two categories.  Plaintiff has cited no authority, and the court has located none, explicitly holding that allegations of failure to adequately staff or fund a nursing home facility, or for failure to follow policies, rules and/or regulations, can be used in support of a claim for breach of care under the AMLA.

The lack of any such of authority is not dispositive, however, especially considering that there also is no authority explicitly stating that such allegations *cannot* support a negligence claim.  Further, that Alabama courts have *implicitly* allowed claims based upon similar allegations.  For example, in *Ex Parte Coosa Valley Health Care, Inc.*, 789 So. 2d 208 (Ala. 2000), the Alabama Supreme Court allowed a negligence claim against a nursing home under the AMLA based upon allegations of (among other things): "failure to provide sufficient numbers of qualified

personnel"; "failure to increase the number of nursing personnel"; "failure to provide

nursing personnel sufficient in number to provide proper care"; "failure to establish,

publish and/or adhere to policies for nursing personnel"; "failure to adopt adequate

guidelines, policies and procedures"; and,

> [t]he failure by the members of the governing body of COOSA
> VALLEY HEALTH CARE to discharge their legal and lawful obligation
> by:
>
> 1.   assuring that the rules and regulations designed to protect
>      the health and safety of the patients, such as [the plaintiff],
>      as promulgated by the Alabama State Board of Health were
>      consistently complied with on an ongoing basis;
>
> 2.   assuring that the patient care policies for Defendants were
>      consistently complied with on an ongoing basis;
>
> 3.   assuring that the policy and procedures manuals for
>      Defendants were updated and modified to address problems
>      which consistently emerged at the facility; and
>
> 4.   responsibly assuring that appropriate corrective measures
>      were implemented to cure problems concerning inadequate
>      patient care.

*Id.* at 211-13.  Based on the Alabama Supreme Court's implicit endorsement of

AMLA claims arising out of allegations of inadequate staffing and failure to follow

policies and procedures, this court concludes that the allegations asserted by the

plaintiff in this case are sufficient to support a claim for relief under the AMLA.

Defendant's motion to dismiss plaintiff's allegations of inadequate budgeting or

staffing and failure to adopt or enforce appropriate policies and procedures is due to be denied.

**B.     Heightened Pleading Requirements/ Motion for a More Definite Statement**

Defendant next argues that plaintiff's amended complaint does not satisfy the heightened pleading requirements of the AMLA.  The provision of the AMLA governing pleading states:

> In any action for injury, damages, or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care, whether resulting from acts or omissions in providing health care, or the hiring, training, supervision, retention, or termination of care givers, the Alabama Medical Liability Act shall govern the parameters of discovery and all aspects of the action. *The plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts.* The plaintiff shall amend his complaint timely upon ascertainment of new or different acts or omissions upon which his claim is based; provided, however, that any such amendment must be made at least 90 days before trial. *Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted. Any party shall be prohibited from conducting discovery with regard to any other act or omission or from introducing at trial evidence of any other act or omission.*

Ala. Code § 6-5-551 (1975) (emphasis supplied).

Thus, when a plaintiff files a complaint alleging that a health care provider breached the standard of care owed to the plaintiff, although every element of the cause of action need not be stated with particularity,

> *the plaintiff must give the defendant health care provider fair notice of the allegedly negligent act and must identify the time and place it occurred and the resulting harm*.  If the complaint affords the defendant health care provider fair notice of these essential elements, the courts should strive to find that the complaint includes the necessary "detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff."  Section 6-5-551; *see* Comments, Rule 9; *see, e.g., Keller v. Security Federal Savings & Loan Ass'n,* 555 So. 2d 151 (Ala. 1989); *Kabel v. Brady,* 519 So. 2d 912 (Ala. 1987).

*Mikkelsen v. Salama*, 619 So. 2d 1382, 1384 (Ala. 1993) (emphasis supplied).

The court finds that the allegations of plaintiff's amended complaint in this case are sufficient to place defendant on fair notice of the basis of plaintiff's claims. Plaintiff's failure to identify the exact time and date her decedent's injuries occurred is not fatal to her claims, because the majority of plaintiff's allegations concern *omissions,* not acts.  As the United States District Court for the Southern District of Alabama explained in *Betts v. Eli Lilly and Co.*, 435 F. Supp. 2d 1180 (S.D. Ala. 2006),

> the obligation to address time and location applies to acts, not omissions, and the plaintiff's claim of failure to warn concerns an omission, not an act. The Alabama Legislature plainly understood the difference between acts and omissions, since Section 6-5-551 uses the term "act or omission" three times, such that its use of "act or acts" cannot easily be disregarded as unintended or inconsequential. Limiting the requirement to acts also makes sense because, while an act usually occurs at a specific site and at a specific time that can be readily identified, an omission is almost always ongoing and not easily described in terms of a specific time and location.

16

*Betts,* 435 F. Supp. 2d at 1189.  Plaintiff is cautioned, however, that she will be strictly held to the statutory requirement to amend her complaint "timely upon ascertainment of new or different acts or omissions upon which his claim is based."  Ala. Code § 6-5-551 (1975).

## IV. CONCLUSION AND ORDERS

In accordance with the foregoing, defendant's motion to dismiss and for a more definite statement is DENIED.  Defendant must file an answer to plaintiff's amended complaint on or before July 21, 2010.  Further, it is ORDERED that the stay on discovery is lifted. The parties must meet and confer regarding a discovery plan pursuant to Federal Rule of Civil Procedure 26(f), and they must submit a report of that meeting on or before August 9, 2010.

DONE this 8th day of July, 2010.

_____
United States District Judge

17